

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re: | Case No.: 11-11906-ABA |
|---|---|
| William F. Leahey and Lauren B. Leahey | Chapter: 13 |
| Debtor. | Judge: Andrew B. Altenburg, Jr. |
| | Hearing Date: September 26, 2017 |

FILED
JEANNE A. NAUGHTON CLERK
SEP 2 6 2017
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

## MEMORANDUM DECISION

The debtors, William F. and Lauren B. Leahey, filed a motion to reconsider this court's denial of their motion to reopen their bankruptcy case to disclose an asset to be administered. This court had held that, though the lawsuit was property of the estate, reopening would be futile as the plan could not be modified to extend beyond 60 months. The court finds distinguishable the cases cited by the Leaheys in their reconsideration motion and, though on slightly different grounds, remains persuaded that the asset may not be administered in this case. Because they did not convince the court that it committed an error of law, the motion for reconsideration will be denied.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and/or (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

The Leaheys filed a chapter 13 case on January 24, 2011. Their 60-month plan, confirmed March 24, 2011, provided for a zero percent (0%) distribution to unsecured creditors. Property of the estate vested with them upon confirmation. According to the defendants in a lawsuit filed by the Leaheys, a claim arose in September 2013 and the Debtors filed a lawsuit in the United States District Court for the Southern District of New York in September 2014. Sometime in 2015, the Leaheys advised their attorney that William Leahey had two worker compensation claims and two third party claims that arose postpetition. Their attorney mailed them amended Schedules A and B under cover of a letter dated April 23, 2015, but the Leaheys never received them, and neither they nor their attorney followed up. Accordingly, the assets were never disclosed in the bankruptcy case nor was a modified plan ever filed. The Leaheys' case was completed on December 23, 2015. Doc. No. 58,¶5. The Leaheys received their Discharge on May 6, 2016. Doc. No. 59. The case was close June 7, 2016.

By order dated August 29, 2017, consistent with an oral ruling delivered the same date, this court denied the Leaheys' Motion to Reopen to Add Post-Petition Assets. Doc. No. 69. The Leaheys filed a Motion to Reconsider on September 5, 2017 alleging error of law. Doc. No. 71. The matter is ripe for disposition.

## DISCUSSION

Though the Leaheys did not cite what rule they were proceeding under, when a reconsideration motion is filed within 14 days of the judgment and questions the correctness of a judgment, the court presumes that the movants intend to proceed under Federal Rule of Civil Procedure 59, incorporated into bankruptcy cases by Federal Rule of Bankruptcy Procedure 9023. *In re Flabeg Solar US Corp.*, 566 B.R. 144, 147 (Bankr. W.D. Pa. 2017); *In re Grigg*, 2013 WL 5310207, at *1 (Bankr. W.D. Pa. 2013). *See also In re Pazzo Pazzo, Inc.*, 02-35976 NLW, 2007 WL 437685, at *3 (Bankr. D.N.J. Feb. 5, 2007) (where movant cited to both Rules 9023 and 9024, making Rule 59 and 60 applicable in bankruptcy case, but only cited to portions of Rule 60(b), court presumed movant was relying only on that rule).

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *In re Scotto-DiClemente*, 463 B.R. 308, 310 (Bankr. D.N.J. 2012) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *Scotto-DiClemente*, 463 B.R. at 310 (citing *Walzer v. Muriel Siebert & Co., Inc.*, 2010 WL 4366197, at *8, 2010 U.S. Dist. LEXIS 115245, *24 (D.N.J. 2010) (citing *North River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995))). The court "'should only entertain a motion to reconsider, if the alleged overlooked controlling decision of law or dispositive factual matter was of a nature that, if considered by the Court, might reasonably have resulted in a different conclusion." *Scotto-Diclemente*, at 310 (quoting *Davis v. Spirit of N.J.*, 2000 WL 33302241, at *2, 2000 U.S. Dist. LEXIS 19903, *5 (D.N.J. 2000)). A motion to reconsider should not be used to reargue matters already argued. *Scotto-Diclemente*, at 310.

This court reminds the Leaheys that it denied their motion to reopen because their plan would have to be modified to account for the additional distribution, but a chapter 13 plan may not exceed 60 months. Here it clarifies that reopening is futile because section 1329(a) provides that once a plan is completed, regardless of original length, it cannot be modified.

The Third Circuit Court of Appeals in *In re Klaas*, 858 F.3d 820 (3d Cir. 2017), recently allowed chapter 13 debtors to complete a plan in the 61st month. It held that "bankruptcy courts retain discretion under the Bankruptcy Code to grant a reasonable grace period for debtors to cure an arrearage. . . ." *Id.*, at 828. In coming to its conclusion, the *Klaas* court distinguished between approving a plan with a term greater than five years, and dismissing a case because it exceeds five years. *Id.*, at 828-29. A court may not confirm a plan that exceeds 60 months. 11 U.S.C. §§ 1322(d), 1329(c). But while section 1307 provides that a court may dismiss a case for "material default," that provision is permissive. *Id.*, at 829. *See* 11 U.S.C. § 1307(c). Section 1328 provides for entry of discharge if the debtor has completed all payments under the plan but "without an express requirement that such payments were made within five years." *Id. See* 11 U.S.C. § 1328(a). Thus

the 60 month prohibition relates to confirmation, either the original plan or a modified one, not dismissal. The *Klaas* court rejected that making a plan payment in the 61st month "would constitute an informal modification of the plan beyond the five years permitted by § 1329(c)." *Id.*, at 831. Rather than "seeking to modify their commitments and create a new plan," they are instead "complet[ing] the payments owed under their confirmed plan." *Id.* The court noted that debtors are allowed to cure defaults early in the plan without requesting formal modification. *Id.*

The important distinction here is that the Leaheys would not be extending an existing plan to cure a default, but attempting to add years to a completed plan to make a distribution not originally contemplated in their confirmed plan. Not only, as originally held, could this court not confirm a modified plan that exceeded 60 months, 11 U.S.C. §§ 1325(a)(1), 1329(b)(1), but the Leaheys could not modify the plan in the first place, since modification is limited to "any time after confirmation of the plan *but before the completion of payments under such plan. . . .*" 11 U.S.C. § 1329(a) (emphasis supplied). Consistent with the confirmed plan, the Leaheys would have to make their last payment thereunder in January 2016. Actually, they made their last plan payment in December 2015. Thus neither the *Klaas* holding, nor any of the cases cited by the Leaheys denying motions to dismiss plans that ran over 60 months, *see In re Hill*, 374 B.R. 745 (Bankr. S.D. Cal. 20070; *In re Henry*, 343 B.R. 190 (Bankr. N.D. Ill. 2006); *In re Brown*, 296 B.R. 20 (Bankr. N.D. Cal. 2003), convinces this court that it made an error of law.

The other cases cited by the Leaheys similarly do not convince this court that it came to the wrong conclusion. The Leaheys cited *Flugence v. Axis Surplus Co. (In re Flugence)*, 738 F.3rd 126 (5th Cir. 2013), for the proposition that while the debtor was judicially estopped from pursuing a previously-undisclosed cause of action, the chapter 13 trustee could do so instead.[1] Unfortunately the *Flugence* court relied on a chapter 7 decision, *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011), for its holding that the chapter 13 trustee could be substituted into the lawsuit for the benefit of creditors. But as pointed out in *In re Roberts*, 556 B.R. 266 (S.D. Miss. 2016), also cited by the Leaheys, a chapter 13 trustee does not have the capacity "to sue and be sued" under section 323 as a chapter 7 trustee is. *Roberts*, at 277 (pointing out that a chapter 13 trustee is not granted the power under section 704(a)(1) to "reduce to money the property of the estate" and is restricted from exercising control over property of the estate by  section 1303) (citing *In re Aycock*, 2014 WL 1047803, at *2 n. 1 (Bankr. W.D. La. March 18, 2014)). This court agrees with the *Roberts* conclusion and therefore is not persuaded by *Flugence*.

The Leaheys argued that the *Roberts* decision supports allowing a chapter 13 case to extend beyond 60 months. But that is not accurate. While the *Roberts* court was bound by the error in *Flugence*, it ameliorated this result by entering an order to show cause why the chapter 13 case should not be converted to chapter 7, thereby avoiding the problem of reopening a chapter 13 case to modify a plan after completion of all plan payments. *See Roberts*, at 276, citing *Meza v. Truman (In re Meza)*, 467 F.3d 874, 878 (5th Cir. 2006) ("if a debtor pays his plan balance and the trustee then seeks to modify the plan under § 1329 to account for newly-acquired funds, modification is not permitted.").

---

[1] Presumably, the court intended that any funds in excess of distributions to creditors would be refunded to the defendants, as that is what it stated it held in *Reed*. The defendants in *Flugence* argued against this result as it would reduce their refund since it would be net of the trustee's commission and administrative expense claims.

As I noted in my prior decision, there is no *per se* time limit to administer assets in a chapter 7 case. But the Leaheys here did not ask to convert to chapter 7, possibly because this maneuver only works if the Leaheys convert in bad faith, as otherwise the postpetition asset is not considered property of the estate. *See* 11 U.S.C. § 348(f)(2). The cause of action in *Roberts*, in contrast, arose prior to the filing of the chapter 13 and therefore was property of the chapter 7 case upon conversion. 11 U.S.C. § 348(f)(1). Thus *Roberts* does not support reconsideration either.

The Leaheys also ask this court to follow *Hauf v. HomEq Servicing Corp.*, 2007 U.S. Dist. LEXIS 94, 2007 WL 196857 (M.D. Ga. 2007). There the court reopened a chapter 13 case for the trustee to pursue and administer a cause of action against HomEq. The debtor had consented to assignment of the claim to the trustee for the benefit of creditors. The district court had found persuasive the bankruptcy court's conclusion that a lump sum asset does not require a modification. "The trustee can take those funds and pay them on a pro rata basis up to a hundred percent to the unsecured creditors. So the fact that the plan can't be modified, it seems to me, is not a reason to say that the trustee cannot administer the asset." *HomEq Servicing Corp. v. Hauf*, 2007 WL 196857, at *4.

Though it is tempting to follow *Hauf* as it would allow this asset to be distributed, this solution suffers from several flaws. First, the Code provides for the trustee to distribute payments "in accordance with the [confirmed] plan." 11 U.S.C. § 1326(a)(2). Here, the confirmed plan provided for the Leaheys only to contribute $12,560 total to pay their administrative, priority and secured creditors. More importantly, it specifically provided for a zero percent distribution to unsecured creditors. Doc. Nos. 2 and 14. What is more is that it did not provide for distribution of proceeds of these lawsuits. The trustee was/is bound to the terms of the confirmed plan. The court simply cannot ignore the mandate of the Code and specifically, section 1326.

Second, even had the Leaheys here offered to assign the right to their lawsuit to the chapter 13 trustee, the trustee would have no authority under the Code to distribute the proceeds to the Leaheys' remaining creditors because the confirmed plan specifically provides that the remaining creditors would receive zero percent.[2] Indeed, for an assignment to work, as set forth above, the Leaheys would have to have modified the plan before the completion of payments under such plan but they did not. Again, the court simply cannot ignore the mandate of the Code and here, section 1329(a).

Lastly, the court acknowledges that *Klaas* reiterated that it has previously interpreted "'under the plan' to mean "made pursuant to the authority conferred by such a plan."' *Klaas*, at 830, citing *In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 243, 254 (3d Cir. 2003), such that a directive in the plan to pay unsecured creditors on a pro rata basis might suffice. But this court hesitates to endorse a scheme that affects an end run around the provisions of title 11. This strategy is objectionable for the same reason that holding that a chapter 13 trustee has concurrent jurisdiction with chapter 13 debtors to litigate causes of action, as held in *In re Griner*, 240 B.R. 432 (Bankr. S.D. Ala. 1999), also cited by the debtor. Chapter 13 trustees are not vested with the power granted under section 704(a)(1) to "reduce to money the property of the estate." They were not intended by Congress to litigate actions on behalf of a chapter 13 debtor's estate, as chapter 7

---

[2] Contrast the chapter 7 trustee who distributes assets merely on a pro rata basis according to the priority scheme set by the Code, not constrained by any plan.

trustees are. As explained in *In re Bowker*, 245 B.R. 192 (Bankr. D.N.J. 2000) (which labeled the *Griner* conclusion "gratuitous dicta," *id.*, at 200):

> There are practical reasons why the debtor alone should control, and be responsible for, litigation. If the standing chapter 13 trustee were the representative of the estate for litigation purposes it would impose a huge, additional administrative burden. After all, one cannot be a party to litigation without assuming responsibility for its prosecution. The trustee would have to investigate the existence of potential litigation, assess its merits, and make a cost benefit analysis of pursuing the claim. See *Gardner*, 218 B.R. at 342. If litigation was determined to be prudent, the trustee would have to select and retain counsel and might need expert witnesses and investigators. The trustee would incur expenses for filing fees, transcripts and other costs of litigation and would need to be involved in formulating litigation strategy, discovery and negotiating settlement. Eventually the trustee would be involved in trial and possibly appeal. Inevitably disputes would arise between the trustee and the debtor concerning decisions made, and actions taken or not taken by the trustee. In this district each standing chapter 13 trustee has tens of thousands of active chapter 13 cases at any one time. Among those cases are dozens, if not hundreds, of causes of action. To require that the trustee be a party to all litigation on behalf of the chapter 13 estates would subject the trustee to an impossible responsibility.
>
> From the debtor's point of view, it makes sense to leave the chapter 13 debtor in charge of litigation. Chapter 13 is a completely voluntary proceeding. A debtor cannot be forced into chapter 13, §§ 303(a) and 706(c), and has the right to forego a discharge and dismiss a case if he or she sees fit. § 1307(b). . . . Judge Lundin, citing *Wirmel*, stated that "[i]f the Chapter 13 debtor has the exclusive right to 'use' the lawsuit under §§ 1303 and 363, then the debtor should control all aspects of the litigation, including settlement." 1 Lundin, *Chapter 13 Bankruptcy* § 3.45, at 3–39. "The reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case." *Freeman*, 72 B.R. at 854 (citations omitted). Thus, from the perspective of either the debtor or the trustee it makes sense to have the debtor be responsible for litigating causes of action that are property of the estate.

*Id.*, at 200. Though the Leaheys would be voluntarily assigning the cause of action to the trustee, it is not the chapter 13 trustee's job to litigate debtors' actions.

The court notes that the proceeds from this cause of action (assuming the Leaheys win) may have never come into the bankruptcy estate had the Leaheys disclosed the asset during the case as they say they intended. There was no indication that the case is on the verge of either settling or having judgment entered, over a year after the bankruptcy case closed. While *Klaas* extended a chapter 13 case to allow for a cure payment, it is doubtful that it could stand for the proposition that a chapter 13 case could be held open for years in order to allow for distribution of lawsuit proceeds, especially where the plan never accounted for or was modified to account for the potential law suit proceeds. Also, debtors are able to contribute proceeds from lawsuits that conclude during a plan, but when the cause of action does not even arise until more than two and a half years into a case, it is questionable whether a chapter 13 trustee would insist on the proceeds

(again, assuming the Leaheys will win) be included in the plan. *See In re D'Antignac*, 2013 WL 1084214, at *7 (noting that at point of former debtor's request to reopen her case, there was no way of knowing if or when proceeds of the lawsuit would be available to distribute). Notably, the chapter 13 trustee in this case did not take a position on the Motion to Reopen.

Some might argue that this result could inspire chapter 13 debtors to hide assets. However, Congress provided for revocation of a discharge when it is obtained by fraud. *See* 11 U.S.C. § 1328(e). Yet, Congress limited that remedy to one year after a discharge is granted, and made fraud the only basis to revoke a discharge. *Id. See Branchburg Plaza Assocs., L.P. v. Fesq (In re Fesq)*, 153 F.3d 113, 120 (3d Cir. N.J. Aug. 18, 1998) ("We adhere to all the relevant considerations— plain meaning, logic, case law and the policies underlying the Code—to hold that fraud is the only ground for relief available for revocation of a Chapter 13 confirmation order."); *In re Daniels*, 163 B.R. 893, 897 (Bankr. S.D. Ga. 1994) ("By virtue of § 1328(e), the debtor can be assured that debtor's 'fresh start' will not be jeopardized by revocation of the discharge unless the debtor acted fraudulently in obtaining it."). Perhaps Congress wanted to afford finality to a chapter 13 case and encourage parties in interest to be diligent.[3] *Fesq*, at 119 ("we conclude that Congress intended that reading of Section 1330(a) because it protects the finality of Chapter 13 confirmation orders.").

That the defendants here may only have discovered the bankruptcy filing by asking the Leaheys during discovery is on them. Dockets of bankruptcy courts and papers filed in cases under title 11 "are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). *See In re Joyce*, 399 B.R. 382, 385 (Bankr. D. Del. 2009) (refusing to expunge or vacate record of debtor's bankruptcy filing where voluntarily filed and not as result of fraud). Upon the filing of the lawsuit, the defendants could have made use of PACER ("Public Access to Court Electronic Records") to view the Leaheys' docket for free, or telephoned VCIS ("Voice Case Information System"), which searches for bankruptcy filings upon input of a social security number, a name, or a case number. Both sources include reports of closed cases, and provide extensive information, including the debtors' names, chapter, date filed and closed, whether pending or closed, the debtors' attorney's name and phone number, the date of the meeting of creditors, and the date of discharge. Both sources are free. *See In re Swilling*, 07-11273-WRS, 2008 WL 4999090, at *4 (Bankr. M.D. Ala. Nov. 20, 2008) ("[Creditor] could have easily checked the public records and verified the filing or simply telephoned the Clerk's office. Moreover, PACER accounts are free and this Court's records can be checked by anyone with computer access. This Court has had, for many years, VCIS (Voice Case Information Service) which permits anyone

---

[3] The *Klaas* court noted that the House Judiciary Report for the Bankruptcy Reform Act of 1978 "lamented that wage payment plans had become 'a way of life for certain debtors' and that extensions on plans for seven to ten years had 'become the closest thing there is to indentured servitude; it lasts for an indentifiable [sic] period, and does not provide the relief and fresh start for the debtor that is the essence of modern bankruptcy law.' . . . In response to Congress's evident concern about debtors being forced to remain in repayment plans indefinitely, the Act capped the plan term at five years, an amendment . . . intended to provide 'a shield' for debtors rather than 'a sword' for creditors." *In re Klaas*, at 830. That sentiment was tempered by the amendment to section 1322 made by Bankruptcy Abuse Prevention and Consumer Protection Act, (Pub. L. 109-8, 119 Stat. 23, enacted April 20, 2005 ("BAPCPA")), forcing "above median" debtors to stay in bankruptcy for five years. *See* 11 U.S.C. § 1322(d). However, Congress kept the outer limit of five years. *See* 11 U.S.C. § 1322(d)(2) ("the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years.").

with a telephone to check bankruptcy filings by either the Debtor's name or social security number.") *In re Oliver*, 323 B.R. 769, 772 (Bankr. M.D. Ala. 2005) (citing PACER and VCIS, stating "Therefore, with virtually no out-of-pocket expense and only a few minutes of a staff person's time, Sullivan could have determined the existence of all of the Debtor's case filings and she could have obtained a copy of the Court's injunction."); *In re Bagby*, 218 B.R. 878, 888 (Bankr. W.D. Tenn. 1998) (stating that claimants "should have known of the pendency of these cases" as bankruptcy is a public record and VCIS and PACER systems are generally available 24 hours a day).

In addition, as stated in this court's original opinion, the defendants' remedy lies in the court where the Leaheys filed their lawsuit that may grant dismissal based on judicial estoppel grounds after a finding of bad faith. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988) ("We are also mindful of the equitable concept of judicial estoppel. This doctrine . . . applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted."). *See also In re D'Antignac*, 2013 WL 1084214, at *8 (stating that denial of motion to reopen was not based on a finding of the good or bad faith of the debtor). Good faith might be found under certain circumstances, possibly where debtors also agree to direct any proceeds first to those creditors who were not paid in full under their plan. *See* 11 U.S.C. § 524(f) ("Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt."). Perhaps this remedy balances the equities so that the defendants do not receive a windfall due to what might have been a simple mistake. But, that is for the United States District Court for the Southern District of New York to consider.

## CONCLUSION

Accordingly, as the Leaheys did not convince this court that it made an error of law, their motion for reconsideration is denied.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: September 26, 2017